Case 6:22-mj-00032 Document 1 Filed on 05/08/22 in TXSD Page 1 of 9

United States Courts
Southern District of Texas
FILED
May 08, 2022
Nathan Ochsner, Clerk of Court

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| | |
|---|---|
| United States of America ) | |
| v. ) | |
| ) | Case No. 6-22-32M |
| Codi Denise HARTMAN ) | |
| ) | |
| ) | |
| ) | |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __May 6, 2022__ in the county of __Jackson__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(v)(I) | Engages in conspiracy to knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law. |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Shea Hine, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 8, 2022

_____
Judge's signature

City and state: Corpus Christi, TX

Julie K. Hampton, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Shea Hine, Special Agent of the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn, depose and state under oath that:

Your affiant, Shea Hine, is an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

Your affiant is presently employed as a Special Agent with the United States Department of Homeland Security – Homeland Security Investigations, where your affiant has worked since September 2020. During your affiant's tenure as a Special Agent, your affiant has completed approximately 800 hours of instruction at the Federal Law Enforcement Training Center in Glynco, Georgia (FLETC) during Criminal Investigator's Training Program (CITP) and Homeland Security Investigations Special Agent Training (HSISAT). Prior to your affiant's tenure as a Special Agent, your affiant was employed as a Border Patrol Agent, in Cotulla, TX, for three (3) years. Your affiant was responsible for tracking and apprehending illegal immigrants along the U.S. border. Your affiant also was a primary agent at the U.S. Border Patrol Checkpoint in Laredo, TX, where he encountered/prevented human/drug smuggling attempts. Your affiant holds a bachelor's degree in Political Science from Texas A&M University where he graduated in 2016.

This affidavit is being submitted in support of the probable cause arrest in the matter of Codi Denise HARTMAN (HARTMAN). Your affiant submits that there is probable cause to believe that HARTMAN did unlawfully, knowingly, and intentionally violate Title 8 U.S.C. § 1324(a)(1)(A)(v)(I): Engages in conspiracy to knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law.

1

The information contained within this affidavit is based on your affiant's personal knowledge, training, and experience, as well as information provided to him by other law enforcement officers assisting with this investigation. Your affiant has not included each and every fact known to him concerning this investigation. Your affiant has set forth only the facts that he believes are necessary to establish the foundation for an order authorizing arrest of HARTMAN.

## FACTS AND CIRCUMSTANCES

On May 6, 2022, at approximately 7:00 a.m., Texas Department of Public Safety (DPS) State Trooper Josue Alvarez conducted a motorist-assist on a red tractor trailer with a refrigeration trailer that was pulled over on the side of the road, near Highway 59 and County Road 202 in Ganado, TX. As Trooper Alvarez pulled behind the trailer, he saw approximately four to five (4-5) people walking near the tractor trailer. Trooper Alvarez also observed the right back door of the trailer to be slightly ajar. Trooper Alvarez then made contact with the driver, later identified as Codi Denise HARTMAN.

Trooper Alvarez asked HARTMAN if she needed any assistance, and her response was that she ran out of diesel. HARTMAN was asked what she was transporting in the tractor trailer, and HARTMAN stated, "energy drinks". Trooper Alvarez asked for a bill of lading, while observing HARTMAN's behavior and demeanor to be nervous. HARTMAN stated that it must be in the cab of the tractor trailer. Trooper Alvarez observed multiple subjects through the cracked door of the trailer. Trooper Alvarez secured the door and called for backup. Multiple subjects began to bang on the doors and walls requesting help. Trooper Alvarez immediately opened the trailer doors and observed multiple male and female subjects with a disheveled appearance. Approximately sixty to one hundred (60-100) people began to flee on foot in different directions and twelve (12) remained on scene.

Jackson County Emergency Medical Services (EMS) were contacted to treat the remaining subjects for extreme dehydration, transporting seven (7) to the Jackson County Hospital. It was later determined that the air conditioning for the trailer was not functioning, compounding the heat effects within the trailer. In total, sixty-five (65) subjects were apprehended, not including HARTMAN. All sixty-five subjects

were determined to have illegally entered the United States by crossing the Rio Grande River, without being inspected or admitted.

HARTMAN was placed under arrest for human smuggling, and the sixty-five subjects were placed under arrest for illegally entering the United States. All subjects were transported to the Jackson County Jail for further investigation.

Upon further inspection of the cab and refrigerated trailer, officers and agents discovered that the tractor trailer and the trailer both had fictitious license plates. Officers and agents were also unable to locate a bill of lading.

Once in an interview room, Trooper Alvarez then advised HARTMAN of her Miranda Warnings, and HSI SAs Shea Hine and Carl Marshall witnessed. HARTMAN stated that she understood her rights, waived said rights, and agreed to make a statement without a lawyer present.

HSI Victoria SAs Hine and Marshall conducted the interview of Codi Denise HARTMAN at the Jackson County Jail. HARTMAN stated that approximately four to five (4-5) days ago she was contacted by an unindicted co-conspirator (UCC-1) who claimed to know her through a friend. UCC-1 offered HARTMAN eight hundred (800) dollars to make a five (5) hour trip. When asked, HARTMAN stated that she was supposed to drive to somewhere in Houston, TX. HARTMAN then drove to the Love's Gas Station in Donna, TX. HARTMAN stated that the tractor trailer was in the parking lot and an unidentified Hispanic female was in the passenger seat. HARTMAN stated that the unidentified female took a picture of her drivers license before they began to drive, and that she threatened her family if she talked to law enforcement.

HARTMAN stated that when they ran out of diesel, the unidentified female exited the vehicle and began walking alongside the highway. There was also a phone left inside the cab of the tractor trailer that HARTMAN stated was the unidentified female's property. HARTMAN stated that she was parked on the side of the road for about an hour before Trooper Alvarez arrived. HARTMAN stated that she never opened the back doors to the trailer, and she thought there were energy drinks in the back of the trailer.

There was also a phone left inside the cab of the tractor trailer that HARTMAN stated was the unidentified female's property. HARTMAN later admitted that the phone in the cab of the tractor trailer was her phone. HARTMAN stated that UCC-1 instructed her to buy a phone so that they could communicate during this transport. HARTMAN stated that her personal phone was still at her house.

At the conclusion of the interview, HARTMAN granted HSI SAs consent to search through her phone that was discovered in the cab of the tractor trailer. Subsequently HSI SAs observed correspondence on HARTMAN's phone between her a several subjects. Specifically, there was an audio message to an identified number where HARTMAN is observed stating, "The door was not locked. They would not let me lock it, so I just started driving. I don't know what the fuck is going on." A separate message from the same number to HARTMAN stated, "Look I'm sorry to bother you a lot but at the next truck stop I need u to stop and back the truck in where no one will see u n open the truck n check on the people make sure there good but check with your own eyes… But please check on them make sure they breathing." These were just two (2) specific instances in which HARTMAN's knowledge of the violation was demonstrated.

## MATERIAL WITNESS STATEMENTS

Luis Enrique MEDINA-Trujillo, a citizen of Mexico, was interviewed by HSI SA Shea Hine and HSI SA Jacob Moya at the Jackson County Jail. During the interview, MEDINA-Trujillo stated that he was an illegal alien from Mexico and that he entered the United States illegally by crossing the Rio Grande River approximately one (1) month ago near Rio Bravo, Mexico. MEDINA-Trujillo stated that he stayed at multiple locations along the border before being transported to the load location. MEDINA-Trujillo advised that once he arrived at the load location, they were later instructed to get inside the commercial reefer trailer. MEDINA-Trujillo added that there were approximately eighty (80) people who got inside the trailer. MEDINA-Trujillo stated that the air conditioning unit was not properly functioning and would turn on and off which resulted in extremely hot conditions. MEDINA-Trujillo added that they could not breath and were sweating. MEDINA-Trujillo also stated that many of the people in the trailer were knocking on and striking the walls because they could not breathe. MEDINA-Trujillo added that once the tractor stopped along the road, he got out of the trailer and saw a female walk around the trailer and back to the tractor truck. MEDINA-Trujillo was shown a photo-lineup

including Codi HARTMAN and positively identified HARTMAN as the female who he saw walking around the trailer. MEDINA-Trujillo explained that he got out of the trailer because he could not breathe and felt he was going to die. MEDINA-Trujillo advised that he fell to his knees once he got out of the trailer because he could not support himself.

Byran Alexander RAPALO-Hernandez, a citizen of Honduras, was interviewed by HSI SA Shea Hine and HSI SA Jacob Moya at the Jackson County Jail. During the interview, RAPALO-Hernandez stated that he was an illegal alien from Honduras and that he entered the United States illegally by crossing the Rio Grande River approximately fifteen (15) days ago near Reynosa, Mexico. MEDINA-Trujillo stated that he stayed at a "stash house" with approximately ten (10) people before being transported to the load location. RAPALO-Hernandez advised that once he arrived at the load location, they were later instructed to get inside the commercial reefer trailer. RAPALO-Hernandez added that there were approximately seventy (70) - one hundred (100) people who got inside the trailer. RAPALO-Hernandez stated that they were inside the trailer for approximately six (6) hours until law enforcement encountered them. RAPALO-Hernandez added that the air conditioning unit only functioned for about one (1) hour. RAPALO-Hernandez described the conditions inside the trailer as hot, low air flow, and that they could not breathe. RAPALO-Hernandez added that he could not wait any longer because of the extreme heat and the low oxygen inside the trailer. RAPALO-Hernandez stated that when the tractor stopped to park, people got out before the police arrived. RAPALO-Hernandez believed he was going to die.

Ruben ORIANA-Munroy, a citizen of Guatemala, was interviewed by HSI SA Carl Marshall, Robert Dutra, and DPS Trooper Alejandro Ortega at the Jackson County Jail. During the interview, ORIANA stated that he illegally entered into the United States by crossing the river at San Felipe, Reynosa, Mexico. ORIANA crossed in a group which moved to an initial stash house, where they stayed for two (2) days. The group was then moved to a second stash house, where they stayed approximately four (4) more days. ORIANA estimates that there were seventy-five to eighty (75-80) people in the abandoned rural house, and a single caretaker. The caretaker fed them ramen soup, eggs, and salami. On the last day, at approximately midnight, a tractor trailer backed up to the house and all of the illegal immigrants were told to get in the trailer. Each person's phone was taken away as they entered the trailer, and they were told that they were being transported to Houston. ORIANA recalled that the trailer was already hot when he entered and never got cool. The refrigeration unit on the trailer was not running. There was no

water provided to the aliens in the trailer. ORIANA stated that he never saw the driver. After about four hours of driving, the trailer occupants all began banging on the walls of the trailer. ORIANA stated, "It was hot like fire. We couldn't breathe. We were going to die." Eventually, the truck stopped, and someone allowed the door to be cracked for a few minutes to allow fresh air, before the truck began moving again. The truck did not stop again until shortly before they were apprehended by law enforcement. ORIANA stated that he was grateful to law enforcement for saving them, because he knew he was about to die.

Leyda Roxana BERDUA-Agustin, a Guatemalan citizen, was interviewed by HSI SA Jacob Moya and Carl Marshall at the Jackson County Jail. During the interview, BERDUA told investigators that she had illegally crossed the Rio Grande River into the United States approximately 12 days prior. BERDUA stated that she spent approximately 6 hours in the back of the trailer. BERDUA stated that she feared death, and that she was hot, sweaty, and could not breathe. Before the trailer door was finally opened, she had begun choking and felt as if she was dying.

Yaquelin Beatriz SANDOVAL-Aguilar, an El Salvadoran citizen, was interviewed by HSI SA Jacob Moya and Carl Marshall at the Jackson County Jail. During the interview, SANDOVAL stated that she illegally entered the United States with a group of other immigrants approximately 8 days previously. She was moved to two (2) different stash houses in the subsequent days, where she waited until she and others were loaded into the back of a tractor trailer at approximately 1:00 a.m. the night before. She was not certain of the time, as everyone's phones were taken away. SANDOVAL stated that there were lots and lots of people. She was fearful of dying in the back of trailer because of the extreme heat. She states that she could barely breathe, was sweating profusely, and was extremely hot.

Ingrid Yadira ORTEGA-Ramirez, a Guatemalan citizen, was interviewed by HSI SA Jacob Moya and Carl Marshall at the Jackson County Jail. During the interview, ORTEGA stated that after illegally crossing the Rio Grande River into the United States, she was placed in a motel room and then later moved to a stash house. At approximately 12:00 a.m. the night before, she and the other occupants of the stash house were loaded into the back of a tractor trailer. She recalls hearing dogs barking as the truck passed through the Border Patrol Checkpoint, but the truck continued traveling north. It was very hot, and people began to bang on the walls of the trailer and yell, pleading to be let out. At one point,

the truck was stopped, and the door was cracked open a few inches to allow fresh air for the occupants. ORTEGA states that she believes some people managed to climb out of the truck trailer at that point. She believes there were approximately eighty-five (85) people inside the trailer, and the total time she spent in the trailer was about six (6) hours. ORTEGA stated that it was very hot, and everyone was soaked in sweat. Most people took off their clothes because their clothes were completely saturated with sweat. There was no water for the occupants of the trailer, and she and others began eating the spoiled tomatoes in the trailer in an attempt to gain some moisture from the produce. ORTEGA stated that she was fearful of dying in the trailer.

**SUMMARY**

Your affiant believes, based on the observations and findings of law enforcement, as well as statements from HARTMAN, that there is probable cause to believe HARTMAN is in violation of Title 8 U.S.C. § 1324(a)(1)(A)(v)(I): Engages in conspiracy to knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law.

*Shea Hine*

Shea Hine
Special Agent
Homeland Security Investigations

Submitted by reliable electronic means, sworn to, signature attested telephonically per Fed.R.Crim. P.4.1, and probable cause found on __8th__ Day of May 2022.

Julie K. Hampton
United States Magistrate Judge
Southern District of Texas